UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) |
| BERNADETTE LOUISE DIGGINS, | ) Case No. 10-40335-JGR |
| SSN: xxx-xx-7234 | ) Chapter 13 |
| | ) |
| Debtor. | ) |
| | ) |

**ORDER**

      This case presents this Court with its first occasion to weigh in on the recent trend of lenders objecting to discharge at the conclusion of a Chapter 13 case because a debtor has failed to make post-petition mortgage payments. After a status conference, the Court asked the parties to brief the issue so it may consider the most recent decisions from other divisions of this Court in rendering its decision. The parties have submitted their briefs, and being advised, the Court is ready to rule.

I. Procedural Background

      The Debtor filed for relief under Chapter 13 on December 2, 2010, and her Chapter 13 Plan was confirmed on September 13, 2011. The Plan provided for payments to be made directly to the Chapter 13 Trustee ("Trustee") over a period of 60 months, and contained the following language in Section IV B:[1]

> Claims set forth below are secured only by an interest in real property that is the debtor's principal residence located at 25083 E. 5th Ave., Aurora, Colorado 80018. Defaults shall be cured and regular payments shall be made.

      The Plan payments included the cure of a $1,401 pre-prepetition default to Debtor's mortgage company ("Chase"). Under Section V, "Other Provisions," the Plan provided that payments would be made directly to Chase on its secured claim. In that section, the amount of the monthly payment to Chase was listed as $1,968.41.

      Debtor's mortgage debt to Chase was assigned to Carrington Mortgage Services ("Carrington") in April 2014. Trustee issued a Notice of Final Cure Mortgage Payment pursuant to Fed. R. Bankr. 3002-1(f) on March 21, 2016 (docket #144), indicating Debtor had paid the entire pre-petition default on her mortgage through the Plan. Carrington filed its response to the Notice of Final Cure, asserting Debtor still owed $29,055.97 in post-petition payments. In the

---

[1] This section is entitled "Classification and Treatment of Claims: Class 2-Defaults."

1

response, Carrington also noted "[t]he Debtor is in the process of completing a Loan Modification. If the Loan Modification process is completed and approved the Debtors will then be current with mortgage payments." (docket entry dated April 11, 2016).

A month later, the Trustee filed a motion to dismiss under 11 U.S.C. § 1307[2] for failure to comply with provisions of the Plan, contending:

> If Carrington Mortgage Services, LLC's assertion is correct, Debtor is in material default with respect to a term of her confirmed plan. The regular mortgage payments listed on Schedule J presumes Debtor will make payments directly to the mortgage company. If Debtor made a conscious decision not to pay the mortgage, those budgeted funds should have been paid to the Trustee for distribution to unsecured creditors. Colorado Bankruptcy Courts have ruled on this issue.

Debtor filed a response, indicating she had entered into a loan modification with Carrington, and that as of July 2016, she had made all required payments and "a modified loan is in underwriting." Further, Debtor stated "Carrington agrees that, once modified, [Debtor] will be current with her mortgage and there will be no default." (Docket #151).

On September 27, 2016, Debtor filed her Certification to Obtain Discharge under § 1328 indicating she had completed all payments and obligations required by her Chapter 13 Plan. The Court set a hearing on the Trustee's Motion to Dismiss, Debtor's Response, and Debtor's Certification to Obtain Discharge. After the hearing, held on October 6, 2016, the Court ordered the parties to submit briefing on whether Debtor had made all payments under the Plan and was entitled to discharge.

II. Discussion

In her brief, Debtor recognizes other divisions of this Court have ruled that post-petition mortgage payments are considered "payments under the plan" when determining whether a debtor is qualified for discharge under §1328(a).[3] Debtor, however, argues that none of the cases prohibit a debtor from reaching out to an "outside-the-plan" creditor to change payments to prevent default.

In this case, Debtor explains that in 2015, her income dropped to about half what it had been when her Chapter 13 Plan was confirmed. She approached Carrington about modifying her home loan so that she could stay current on payments with a reduced income, and Carrington agreed. Consistent with her instructions from Carrington, Debtor did not make mortgage payments for several months, and then resumed payments during a trial period.

---

[2] The Trustee does not cite a subsection of sec. 1307 in his motion.
[3] That section provides: as soon as practicable after completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title.... 11 U.S.C. § 1328(a).

2

The Trustee concedes "a loan modification may cure deficiencies in post-petition mortgage payments under some circumstances." Trustee, however, cites *In re Strimbu*, 10-19146-MER (March 31, 2016), where the Court held that a loan modification itself does not necessarily mitigate a material default. Trustee contends that, because Debtor did not take steps to address the default until month 60 of her plan, and did not complete the mortgage modification until month 70, Debtor's case should be dismissed without a discharge.

In their briefs, the parties cite eight cases from other divisions of this Court, which this Court has thoroughly reviewed.

1. *In re Daggs*, No. 10-16518 HRT (Bankr. D. Colo. January 6, 2014). In this case, the Court held that a debtor who completed all the payments her plan required her to make to the trustee, but who did not make all of the payments the plan required her to make directly to the mortgagee, had not completed "all payments under the plan," as required for debtor to obtain discharge under § 1328(a). Debtor had missed nine post-petition payments, totaling $11,768. The Court held debtor was not entitled to discharge, and her case was subject to conversion or dismissal under § 1307(c)(6). The Court considered whether dismissal or conversion would be in the best interests of creditors, and granted debtor's request to convert to Chapter 7.

2. *In re Furuiye*, No. 10-15854 SBB (Bankr. D. Colo. April 7, 2014). The debtors had missed 29 payments with a delinquency of over $50,000. Judge Brooks followed the reasoning set forth in *Daggs* and reached the same result, granting the debtors' request to convert to Chapter 7.

3. *In re Gonzales*, No. 09-27194 HRT (Bankr. D. Colo. June 9, 2015). Here, the discharge had been entered on the trustee's statement of completion with request for discharge. The Court cited *Daggs* and cases from other jurisdictions and held debtors had not completed all payments under the plan as required by § 1328(a), because they still owed their lender $49,377 in post-petition payments. Thus, the Court vacated the discharge.

4. *In re Formaneck*, No. 10-20070 MER (Bankr. D. Colo. July 13, 2015). The debtors failed to make mortgage payments over a 30-month period, in a total amount of over $100,000. In this case, the Court considered that debtors had not disclosed or even addressed how they had been spending their income allocated for mortgage payments over the latter half of the plan. Debtors had not requested conversion, and the Court dismissed their case without a discharge.

5. *In re Cherry*, No.10-25318 TBM (Bankr. D. Colo. January 19, 2016). At the time the notice of final cure was filed, debtors had made most of their post-petition mortgage payments, and had only missed one $365 payment during the plan. The Court agreed with the reasoning of *Gonzales,* and determined that "at present," discharge could not enter. However, Judge McNamara stated he was "loathe" to deny the debtors a discharge based on the failure to make a single payment to one secured creditor. Therefore, the Court gave debtors 30 days to file a new certification to obtain discharge confirming that all payments had been made.

6. *In re Hoyt-Kieckhaben,* No. 11-13705 EEB (February 23, 2016). In this case, during the life of the plan, debtor's income declined, and she tried to modify her mortgage, but did not succeed. The debtor ultimately failed to make 24 payments to her mortgage lender totaling $49,000. Judge Brown observed:

> So far only one circuit court has directly addressed the question of whether Direct Payments are "payments under the plan." In *In re Foster*, 670 F.2d 478 (5th Cir.1982),[4] the Fifth Circuit held that, when a chapter 13 plan provides for Direct Payments to a creditor, those payments are nevertheless payments "under the plan." This court and other lower courts have reached this conclusion based on a straightforward reading of the Code's language. Payments are deemed payments "under the plan," if they are made pursuant to the provisions or terms of a plan, or are "dealt with" by a plan. See, *e.g., In re Perez*, 339 B.R. 385, 390 n. 4 (Bankr.S.D.Tex.2006); *In re Kessler*, 2015 WL 4726794 (Bankr.N.D.Tex. June 9, 2015); *In re Hankins*, 62 B.R. 831, 835 (Bankr.W.D.Va.1986); *In re Russell*, 458 B.R. 731, 739 (Bankr.E.D.Va.2010).

*In re Hoyt-Kieckhaben*, 546 B.R. 868, 871 (Bankr. D. Colo. 2016).

Judge Brown noted the debtor had cited no authority to the contrary, and determined she had not made all payments under the plan and was not entitled to discharge under § 1328(a). Because the debtor had requested conversion, Judge Brown granted that motion.

7. *In re Strimbu*, 10-19146 MER (March 31, 2016). Debtors failed to make post-petition mortgage payments for 57 months and the amount due was $163,361. Debtors admitted they failed to make payments, but argued they had applied to and were accepted into a mortgage mitigation program in May 2015. The Court rejected that argument, noting debtors had failed to explain why they

---

[4] The Fifth Circuit recently followed *Foster* in the case of *In re Kessler*, 655 Fed. Appx. 242 (5th Cir. 2016).

4

> took no action earlier in the case, and why payments were not made when debtor found a new job early in the case. The Court denied discharge and dismissed the case.

Most recently, in *In re Payer*, No. 10-33656 HRT (May 5, 2016), the Court initially denied debtors' discharge because they had failed to make eight post-petition payments, "leaving over $10,000 that the debtors had committed to use for making ongoing mortgage payments unaccounted for." (Docket #76, case 10-33656). While debtors argued they were in the process of obtaining a loan modification, the Court observed it would be at least three months before the modification was approved. Importantly, however, Judge Tallman noted as follows:

> The result reached by the Court in this case does not mean that a debtor has no ability, following the end of the plan, to make up missed mortgage payments or to pay post-petition fees. Rule 3002.1(h) sets up a process by which a bankruptcy court, after the debtor has completed all payments to the chapter 13 trustee, may determine the amount necessary to cure the mortgage debt. The very fact that, upon a timely Rule 3002.1(h) motion, the court must make that determination strongly suggests that the court must also permit a reasonable time period to effect that judicially determined cure. Any other interpretation would relegate a court's determination under Rule 3002.1(h) to a determination of whether or not the mortgage debt was cured during the plan term.

Nevertheless, the Court reasoned it was not likely debtors could cure a $10,000 deficiency within a reasonable time, and gave the debtors 30 days to file a motion to convert to chapter 7, failing which the case would be dismissed.

Instead, the debtors filed a motion to reconsider the order, indicating they were "devastated" by the Court's ruling, because they had actually continued to make payments to the lender while applying for the loan modification, and were only behind by three mortgage payments. Further, debtors stated:

> The debtors have the ability to become current in payments due under the plan within the next seven days. The debtors have this ability because they were told by the mortgage holder not to make the April and May 2016 payments. The debtors have the ability to make up the last payment ($1,372.08).

On reconsideration, Judge Tallman vacated the prior order and entered debtors' discharge, finding "the debtors have fully complied with the terms of their confirmed plan." (Docket #89, case #10-33656).

After thoroughly reviewing these cases, the Court determines the instant case is most like the situations presented in *Cherry* and *Payer*. Here, on October 24, 2016,

5

Carrington filed a "Supplemental Statement in Response to Notice of Final Cure Payment" stating: "Debtors' Loan Modification has been finalized. Creditor agrees that the Debtor is otherwise current on all payments consistent with § 1322(b)(5)." (Claims register, POC #21, doc filed October 24, 2016).

As in the *Cherry* and *Payer* cases, it would be inequitable to deny discharge in this unique situation. Unlike the debtors in the *Strimbu* case, Debtor regularly paid her mortgage for four years of her plan, and then acted promptly to modify the mortgage as soon as her income dropped. Even if this Court believed that Debtor's temporary inability to make payments to Carrington as they worked out a modification was a default, it was not material under 11 U.S.C. § 1307(c)(6). *See, e.g., In re Sanchez*, 2016 WL 6127507 (Bankr. S.D. Fla. October 20, 2016) (holding a failure to timely turn over tax returns was a default, but not a material default). Any default was technical and temporary, and has since been cured to the lender's satisfaction.

The Court also agrees with Debtor that the provisions of 11 U.S.C. §§ 1322 and 1325 permit "preferred treatment" for some creditors. *In re Binder*, 224 B.R. 483, 490 (Bankr.D.Colo. 1998). Specifically, for a creditor holding "long-term debt secured only by a lien against the debtor's residence" the debtor is allowed to "cure arrearages over a reasonable period of time" so long as they keep current with regard to other obligations. *Id*.

Further, "although sections 1322 and 1325 prohibit a debtor and a bankruptcy court from knowingly . . . extending a plan that extends beyond five years . . . these sections of the Bankruptcy Code do not mandate dismissal of a bankruptcy case if a debtor needs a reasonable period of time to cure an unanticipated arrearage incurred during the sixty-month period." *In re Handy,* 557 B.R. 625, 628 (Bankr. N.D. Ill. 2016) (citing *Shovlin v. Klaas*, 539 B.R. 465 (W. D. Pa. 2015)*.*

For the foregoing reasons, it is

ORDERED that the Trustee's Motion to Dismiss is DENIED. The Clerk shall enter the Debtor's discharge and close the case.

Dated this 20th day of December, 2016.

BY THE COURT:

Joseph G. Rosania, Jr.
United States Bankruptcy Judge